Ronald Van Hook
515 S. 11th St. #3
Payette, ID   83661
(208) 982-0164
S8Ncqrt@Gmail.com
Pro Se

IN THE UNITED STATES DISTRICT COURT FOR
THE FOURTH JUDICIAL DISTRICT OF IDAHO SOUTHERN DIVISION

| | |
|---|---|
| Ronald Van Hook<br>Gabriel Van Hook and Nathan Van Hook | Case No. _____ |
| Plaintiffs | 1st DECLARATION |
| vs. | |
| State of Idaho<br>Idaho Bar Association<br>Steven Fisher and Fisher law firm<br>Mary Grant, Kimberli Stretch and Idaho Legal Aid<br>Virginia Bond and Bond Law Chartered<br>Christopher D. Boyd and/or Adams County Idaho<br>John Doe(s) 1-100<br>Unknown Agents (of Idaho Third Judicial District) | |
| Defendants | |

I, Ronald L. Van Hook, plaintiff in the above entitled action, have personal knowledge of

all facts stated in this declaration, and intend to testify, without reservation, that the following is

true and correct:

After I had been declared a "Vexatious Litigant" by the State of Idaho, I filed for Leave

from the District Court in Canyon County Case CV-14-18-5576 seeking the Ability to bring a

Civil Complaint against Defendants; The State of Idaho, The Idaho Bar Association and John

Doe(s) 1-100.  Months later I was given a hearing and told to come back later and produced evidence.  Then evidence was produced and I was told to come back again for another Hearing. Then was told to write a Brief and submit it to the Court.  The Brief was submitted and the case was Summarily Dismissed by the District Court.

A Copy of that Brief in Canyon County Case CV-14-18-5576 is attached as EXHIBIT 1, and is sworn to be of my own making, and that all facts stated therein are 100% true and correct, and that all arguments made are arguments I intend to make before a Federal Court and Jury, along with other applicable arguments and evidence as needed.

The following are copies of affidavits submitted with the Brief in CV-14-18-5576, labeled also as exhibits and attached hereto, and are sworn to be of my own making, and that all facts stated therein are 100% true and correct:

Exhibit 2 Affidavit of Ronald Van Hook Regarding Adams County Courts and Legal Misconduct

Exhibit 3 Affidavit of Ronald Van Hook pertaining to issues involving Virginia Bond

Exhibit 4 Affidavit of Ronald Van Hook pertaining to issues involving Steven Fisher

Exhibit 5 Affidavit of Ronald Van Hook Regarding issues of Vexatious Litigation

Exhibit 6 Affidavit of Ronald Van Hook Regarding Further Damages from States prevention of Due Process

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on this 8 day of May, 2019.

_____

Ronald L. Van Hook

Exhibit 1

Ronald Van Hook
515 S. 11th St. #3
Payette, ID   83661
(208) 982-0164

Pro Se


IN THE DISTRICT COURT FOR THE THIRD JUDICIAL DISTRICT OF THE STATE
OF IDAHO, IN AND FOR THE COUNTY OF CANYON


Ronald Van Hook
Plaintiff

vs.

State of Idaho
Idaho Bar Association
John Doe(s) 1-100
Defendants

Case No.  CV14-18-5576

BRIEF as directed by the Court


As directed by the Court on 11/15/18, the following Brief is submitted.  A subsequent

hearing is scheduled for 1/17/19.

Pro Se litigants' Court submissions are to be construed liberally and held to less stringent

standards than submissions of lawyers.  If the Court can reasonably read the submissions, it

should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax

and sentence structure, or litigant's unfamiliarity with rule requirements.

Boag v. MacDougall, 454 U.S. 364, 102 S.Ct.700, 70 L.Ed.2d 551 (1982); Estelle v. Gamble,
429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Conley v. Gibson, 355 U.S. 41,
45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30,
L.Ed.2d (1972); McDowell v. Delaware State Police, 88 F.3d 188, 189 (3rd Cir. 1996); United
States v. Day, 969 F.2d 39, 42 (3rd Cir. 1992) (holding pro se petition cannot be held to same
standard as pleadings drafted by attorneys); Then v. I.N.S., 58 F.Supp.2d 422, 429 (D.N.J. 1999)

## STATEMENT OF FACTS

1. On 11/15/18 Plaintiff submitted to the court "Affidavit of Ronald Van Hook Regarding issues surrounding request for leave to file Civil Complaint for Damages against State of Idaho, the Idaho Bar Association and John Does 1-100" and the following exhibits:

> Exhibit 1 - Flash Drive containing copies of court documents, audio hearings, notes and other evidence.

> Exhibit 2 - Letter from Christopher D. Boyd - Adams County Prosecuting Attorney

> Exhibit 3 - Petition for Writ of Certiorari, Petition for Writ of Habeas Corpus and attached copy of Petition for an Immediate and Temporary Exparte Restraining Order (attached as Exhibit A), and Motion for Expedited Hearing

> Exhibit 4 - Fax Transmission of Petition for an Immediate and Temporary Exparte Restraining Order

> Exhibit 5 - No Contact Order in Adams County case CR02-18-020358

> Exhibit 6 - Criminal Complaint in Adams County case CR02-18-020358

> Exhibit 7 - Receipt and Notice of Appearance upon Release on your Own Recognizance

> Exhibit 8 - Search Warrant

> Exhibit 9 - Order to Release in Adams County case CR02-18-020358

> Exhibit 10 - Order of Dismissal in Adams County case CR02-18-020358

> Exhibit 11 - Natural Fathers Request for Appointment of Attorney per Idaho Juvenile Rule 9(a) in Adams County JV-02-18-0841

> Exhibit 12 - Idaho Power Notice of intention to deny or terminate service

> Exhibit 13 - Statement of Laura Mathes

> Exhibit 14 - Transcripts September 18, 2014 -  CV-2014-3311

> Exhibit 15 - Canyon County CV-2014-7409 - Motion for Relief per IRCP 60 and attached Exhibit 1.

2. Ronald Van Hook (PLAINTIFF) and Dawn Cannon f.k.a. Van Hook (CANNON), were married in September 1997 and had 3 children; Renee - dob 7-26-2000 (Renee), Gabriel - dob 02-24-2004 (Gabriel) and Nathan - dob 8-10-2007 (Nathan).  In June of 2014, CANNON fled with the Van Hook children to places unknown, accompanied by Lloyd and Karen Elderedge (ELDREDGES).  Plaintiff filed for and was granted a Civil Protection Order - CPO on behalf of

the Van Hook children against CANNON in Canyon County CV-2014-6865 (6865).

PLAINTIFF later filed for a legal separation in Canyon County CV-2014-7409 (7409). The

court stated the situation appeared to be one of 'Custodial Interference'. As CANNON could not

be located to be served, the Court ordered service by publication, and there was effective service

on 7409 on 8-17-14, but not effective service on 6865. The court stated that to remedy the

ineffective service on 6865, the CPO case could be refilled and republished.

3. CV-2014-8801 was heard on 8-25-14 where PLAINTIFF filed a CPO against

CANNON, but was dismissed by the court after the court refused to accept an attachment

containing allegations.

4. CV-2014-9041 was a CPO against CANNON, but was dismissed by the court after the court

claimed there were no allegations of domestic violence.

5. After 7409 went into default, PLAINTIFF was served with a Civil Protection Order from

Adams County CV-2014-3311 (3311), CANNON was Claimant and PLAINTIFF was

Respondent, and in that CPO Petition CANNON failed to disclose pending custody issues in

7409. 3311 was presided over by Magistrate Judge John Meienhoffer (MEIENHOFFER).

6. A Default Hearing on 7409 was held on 9-11-2014 and the plaintiff stated for the court,

> "My wife's threatened to kill my kids. She doesn't take care of them. They live in
> squalor. She does not tend to my kids. She lets other people smack my kids around. She
> smacks my kids around. She's gotten my daughter drunk on several occasions. My
> daughter is 13 years old. She ran off with a convicted sex offender from the State of
> Oregon. That's been expunged, but from a Private Investigators Report, He's a sexual
> criminal, that's who she's in the presence of. "

and the issues were found to be true and the PLAINTIFF was granted the separation and full

legal custody of the Van Hook children.

7. In 3311at a hearing on 9-18-14, Steven Fisher (FISHER) appeared for PLAINTIFF, but had

not filed a Notice of Appearance. FISHER informed the court of the Custody and Separation

Order in 7409 and that CANNON had attended the Focus on the Children class on 7-31-14 as ordered in 7409. CANNON was given additional time by the court to retain counsel and the hearing was reset.

8. In 3311 at a hearing on 10-02-14, Mary Grant (GRANT) from Idaho Legal Aid appeared for CANNON In that hearing the court was informed that CANNON had previously filed a CPO in Canyon County in CV-2012-6404 (6404) which was dismissed by CANNON. Testimony from CANNON in 3311 stated she had dismissed 6404 because '5 guys' had stood over her in the court intimidating her. CANNON further testified in 3311 that she wasn't concerned for her safety or afraid of anything when she left in June of 2014 with the ELDREDGES and that she and the children had had no contact with the PLAINTIFF and had not disclosed their whereabouts since June of 2014. When CANNON was asked why she had waited from June until September of 2014 to file for a CPO, CANNON stated that 'Roes Advocates' in Valley County had advised against filing a CPO. Further testimony showed Adams County Deputy Sheriff Brian Wood (WOOD) had assisted CANNON in relocating in Adams County prior to the filing of 3311. CANNON claimed PLAINTIFF used illegal substances up until June 18, 2014 when she left and shoots up in his arm. CANNON also admits to her significant weight loss and change of appearance since June 2014 but denies the use of illegal substances. CANNON claims PLAINTIFF uses drugs and shoots up in the arm. CANNON states she is aware of 'Sex Offenses' involving Lloyd Elderedge in Oregon, but claims all charges were dismissed. Cannon states she knows of charges against Lloyd Elderedge in Washington where he was accused of molesting Karen Eldredges' 2 daughters from a previous marriage, but claims 'an uncle' did it and Lloyd Elderedge had nothing to do with it. The State of Washington terminated the parental rights of Karen Elderedge. CANNON and the ELDREDGES all lived together with the Eldredge

children and the Van Hook children after June 2014 in tents and without amenities. Law

Enforcement claims to have made Health and Welfare checks on CANNON and the Van Hook

children in mid July of 2014. CANNON states that PLAINTIFF threatened to kill her by saying

"If I ever thought you was cheating on me I'd (sound) and he stopped with the K word"

9. On 10-02-14 the court in 3311 interviewed Renee but refused to interview Gabriel or Nathan.

Judge states to Renee in the interview that there's an order (7409) giving plaintiff sole legal

custody of the Van Hook children.  Renee stated that WOOD helped them hide from

PLAINTIFF.  Renee states she can see track marks in PLAINTIFFs arm under a red tattoo.

10. Exhibits Submitted to the Court in 3311 on 10-02-14 as follows:

> Exhibit 1 ... compilation of documents filed in canyon county, eye witness statements, affidavits received - admitted only to demonstrate 'Frame of Mind' of PLAINTIFF

> Exhibit 2 ... 6865 CPO filed by PLAINTIFF on 7-1-14 in Canyon County.

> Exhibit 3 ... service by publication of 7409.

> Exhibit 4 ... CANNON dismissing CPO in 2012 in Canyon County.

> Exhibit 5 ... CANNONs Temp. CPO in July 2nd of 2012 in Canyon County.

> Exhibit 6 ... CANNONs petition for CPO in 2012 in Canyon County.

> Exhibit 7 ... Audio of Hearing for CPO in 2012 in Canyon County - Denied

> Exhibit 8 ... Record of CANNONs attendance to 'Focus on the Children' class as ordered in 7409.

> FISHER attempts to offer memory stick (flash drive) with family photos and videos as an exhibit.  GRANT objects and the court sustains.

11. Darieann Johnson on 10-02-14 testified to events that occurred prior to June of 2014 while

CANNON and PLAINTIFF lived in Caldwell, where she had daily contact with CANNON and

the ELDREDGES.

* CANNON stated she would not leave PLAINTIFF because he'd fight for the kids

* CANNON has been seen striking the children.

* Van Hook children locked outside all day by CANNON and the ELDREDGES.

* Karen Eldredge admitted to sexual activity with CANNON and to phone texting between Lloyd Elderedge and CANNON of a sexual nature.

* CANNONs living conditions with the Van Hook children were unsanitary.

* Karen Eldredge and the Van Hook children referred to PLAINTFF as the children's sperm donor.  The Van Hook children referred to ELDREDGES as Mom and Dad which was allowed by CANNON but unknown at the time by PLAINTIFF.

* Renee Van Hook consumed alcohol to the point of intoxication.

* CANNON, with Gabriel and Nathan Van Hook, stayed in the ELDREDGEs residence.

12. Frank O'Leary testified on 10-02-14 that he had asked CANNON about the incident involving her vehicle, her threat to kill the family and PLAINTIFF taking control of the vehicle... CANNON had responded while crying that she didn't mean to do that.  Mr. O'Leary also testified he had appeared to testify in 6404, and was in the court room when CANNON dismissed the case. Mr. O'Leary witnessed CANNON saying (on departure from the court room) "I'm just going to do this again."

13. The Court in 3311 on 10-02-14 stated,

> "I do not want the children around Lloyd and Karen Elderedge at this point.  I have far too many concerns with that.  He was placed on 5 years probation in the State of Oregon for inappropriate contact with a 15 year old girl, Renee is currently 14 years old.  And there's allegations that Karen Elderedge was drinking daily while down at the trailer court, where Ms. Johnson said Karen Elderedge always had a beer in her hand.  So there's to be no further contact with Karen and Lloyd Elderedge. That's going to be part of the Courts Order in allowing Mrs. Van Hook to continue to maintain the primary custody of the children pending our court date on the 27th."

14. The court in 3311 on 10-02-14 ordered hair follicle drug testing of both parties and sets new

hearing date. Court orders PLAINTIFF to get supervised visitation with the children, and orders

CANNON to allow no further contact of the Van Hook children with the ELDREDGES. Court

further orders H&W investigation.

15. PLAINTIFF and CANNON submitted drug testing results that were negative on 10-27-14.

16. Exhibit 1 in 3311 is re-offered to the Court on 10-27-14 allowing the affidavits contained to

be admitted per IRFLP 102-B-2, and these exhibits are Numbered 1 followed by a letter

> 1-A  Jean Moore Oct. 13, 2014 Letter... Admitted
> 1-B  Sara Pope Oct. 14, 2014 Affidavit ... Not Admitted
> 1-C  Tara Arp hand written Letter ... Admitted
> 1-D  Robert Gorman typed letter ... Not Admitted
> 1-E  Sherry Davis 3 page affidavit ... Admitted
> 1-F  James Davis 2 page Affidavit ... Admitted
> 1-G  Dale Sharett Affidavit ... Admitted
> 1-H  Vince Taylor Statement ... Not Admitted
> 1-I  Statement of Barbara Taylor ... Not Admitted
> 1-J  Terry Cook Affidavit ... Not Admitted
> 1-K  Ronald Daniels to whom it may concern Oct.13 ... Not Admitted
> 1-L  Patricia Gordon Statement ... Not Admitted
> 1-M  Melissa Matheney statement ... Admitted
> 1-N  Deborah Moore affidavit ... Admitted

17. Nicholas Scoyni testifies in 3311 on 10-27-14 that CANNON lived in unsanitary conditions

with the children, provided Renee with alcohol (along with Lloyd Elderedge), was involved in

suspected acts of adultery with the ELDREDGES, and was not a responsible mother. Mr. Scoyni

also swears by affidavit (found in Exhibit 1 of CV14-18-5576 *[follow path (folder) Court*

*Documents ... to ... (folder) 2014-7409 ... to ... (pdf) 20161029 - Affidavit of Nicholas Scoyni]*)

that FISHER was well aware of PLAINTIFFs insistence that witnesses Lt. Donnia Ballard and

Tara Arp be called to testify and that records from the Adams County Sheriffs Department were

to be acquired and presented as evidence; which was not done.

18. Krista Easteppe (EASTEPPE), of the Idaho Department of Health and Welfare, had

conducted a Court Ordered evaluation, and testified to events and findings after June of 2014.

* She had prior knowledge of CANNON, the Van Hook children and the ELDREDGES through a "Multi Disciplinary Team Meeting" (MDT) where Law Enforcement was present and indicated they were hiding out from a domestic violence situation (prior to the filing of 3311).

* "I am the States 4-E Expert".

* CANNON and the Van Hook children were living in tents but that she took no photos as a part of her investigation.

* Made no reference to or gave any consideration to the witnesses of PLAINTIFF, and disregarded all allegations made by PLAINTIFF.

* When questioned about disregarding PLAINTIFF witness affidavits, EASTEPPE testified:

> "I don't know who those people are and I would have to say I don't know. I don't know who they are so I have no way of knowing what they were saying was correct or not correct, because I don't know them. I didn't get the chance to talk to them at the interview."

* EASTEPPE testifies PLAINTIFF "exhibits characteristics indicative of stalking behavior".

19. Transcribed from 3311 on 10-27-14

> COURT: Ms. Easteppe, I want to make this question to you in the following context. How would you expect a reasonable ordinary husband, father of three, married for 16 years to react, if he came home some time in the middle of July to see that his wife and the three children had vanished and then went through basically a two and a half month period where he followed up with trying to locate his family, and then considering that hypothetical of what a reasonable person, ordinary father similarly situated would do. I'd like you to opine for the court how you felt Mr. Van Hook reacted to that scenario as opposed to what you would expect from somebody in the reasonable ordinary context that that happened to. So in other words, Did Mr. Van Hook behave and conduct his affairs as a reasonable and ordinary person similarly situated would? Was he more angry than normal? Was he less angry than normal? Your opinion please.

Ms. Easteppe:  I think a normal male that that would have happened to would have had a range of emotions.  Sorrow, tears, empathy, anger, and not only would look at himself about what happened but also look at what happened outside with his wife and possibly his children.  A person may seek assistance or help with their friends about that, trying to make sense of that.  And there would be worry, concern, and just a whole range of emotions.  And I didn't see that.  I saw a ton of, well maybe not a ton, but a lot of affidavits smearing Mrs. Van Hook.  I saw a flier that said my family's missing.  She's with bad people.  My children are with bad people.  A three point state search.  Private investigators.  And I believe that that's really in excess of what a general person would have done.  Certainly they would have made contacts with their friends and said do you know where they are?  I'm concerned, I'm worried about them, and those kind of things.  But the totality of what happened is totally different from a person who is functioning in in at all levels.

Court:  Thank you.  ok Mr, Fisher.

Mr. Fisher:  Did you talk with Mr. Van Hook about whether he had made contact with friends, and law enforcement, and those kinds of things that you've described that a reasonable person would do?

Ms. Easteppe:  yes.  Well he told me he did.  I didn't ask him, he told me what he did.

Mr. Fisher:  So he did all the things that you said would be reasonable, but he went above and beyond that is what it sounds like.

Ms. Easteppe:  Yeah

Mr. Fisher:  So he should have stopped somewhere before going to three States and those kind of things.  That's what your testimony is?

Ms. Easteppe:  I think in what in the evidence that I had in front of me is when he reached out to other people in his environment, and most of them, two of them was, well one of them was a relative, one of them was a family friend that'd been there for a while, and Tara as well, and the rest of them were residents in a trailer park who just reported they'd seen a lot of stuff, and that and all of this negative stuff against Mrs. Van Hook.  And I would imagine that it took a lot of time to put all that together, and to go searching for all these people and to gather all that information, and that's what I'm saying is different from a person who who's wife of seventeen years has left him, and he loves her and he's concerned, and he's concerned about his children.  It's incongruent, that his behavior is incongruent with what he did.

Mr. Fisher:  I have nothing further.

20.  Mark Settles testified on 10-27-14 that at the 2012 CPO in Canyon County (6404), he had

appeared to be a witness, and heard CANNON state "I'm just going to do it again".

21. Further Exhibits Submitted to the Court in 3311 on 10-27-14 as follows:

Exhibit 9... 5 photographs of the Van Hook children on a visitation.

Exhibit 10 ... VA stress management report and specialized services for the children referral.

Exhibit 11 ... Certified Copy from court in Malheur County Oregon for conviction of Lloyd Elderedge. (sex offense)

22. The Court in 3311, in its final analysis on 10-27-14, states there is concern about CANNONS methodology, that Renee was likely coached, and that this should have been litigated down in Caldwell. The court orders the Van Hook children are to have no contact with the ELDREDGES, and to PLAINTIFF that the court doesn't know how a person in your situation should behave, and that PLAINTIFF has Legitimate anger.

23. The Court in 3311 grants a protection order to CANNON on 10-27-14, but as the court found no abuse to the children, did not extend order to the children.

24. The Court in 3311 on 10-27-14 acknowledges PLAINTIFF also filed a CPO against CANNON but dismissed it without allowing PLAINTIFF to call witnesses that FISHER had not called.

25. A transcript of the Decision and Order from the Court in 3311 can be found in the Appellants Reply Brief, a copy of which is located in the Supreme Court Record for Docket #44989. (on pages 1170-1173)

26. CV-2014-11708 was heard on 11-14-14 where PLAINTIFF filed a CPO against CANNON, but was dismissed by the court after the court claimed there were no immediate threat of domestic violence. PLAINTIFF protested and again informed the court of CANNONs attempted murder of Gabriel, Nathan, herself and the PLAINTIFF. The court stated its willingness to grant

the CPO between CANNON and the PLAINTIFF, but would not extend it to the children. The

court, presided over by Gary DeMeyer (DEMEYER) demonstrated its knowledge of a pending

divorce between PLAINTIFF and CANNON and refused the CPO for that reason.  FISHER

submitted a new motion for a CPO in 6865 on this same day but did not set it to hearing.

27.  Between 10/15/14 and 4/16/15 in 7409, CANNON and her counsel GRANT filed Motions

to Set Aside Order of Default, Motion in Limine and Judicial Notice of Report of Child

Protective Investigation, Motion for an Immediate and Temporary Ex Parte Restraining Order,

and a Motion For Temporary Orders for Custody.   FISHER failed to file any objections to any

of these Motions.

28.  On 04-13-2015 in 3311, presided over by MEIENHOFFER, the court heard PLAINTIFFs

Motion to hold CANNON in contempt.  CANNON through GRANT filed a Motion to dismiss

and a Motion to change venue to Canyon County.  PLAINTIFF, with CANNON and GRANT

present, informed the Court of GRANTS attempt to file for new temporary orders in 7409 that

were inconsistent with the original orders in 3311.  The Court dismissed the Contempt charges

without prejudice and ordered the venue changed to Canyon County.

29.  On 4/16/15 the court presided over by DEMEYER heard CANNONS Motion for Temporary

Orders and Motion to Consolidate Cases (3311 consolidated with 7409).  The court directly

asked GRANT if the new temporary orders were consistent with the previous orders, and

GRANT answered yes, while FISHER failed to object.  The court threatened PLAINTIFF with

arrest when PLAINTIFF stood to object.  The temporary orders omitted the portion of the

original orders that forbid CANNON from allowing contact of the Van Hook children with the

ELDREDGES.  When the court called on PLAINTIFF to speak, FISHER promptly interrupted

and prevented PLAINTIFF from speaking.  The court allowed FISHER to then withdraw from

the case.  An Affidavit is submitted further detailing the facts of FISHERs involvement in 7409,

3311 and 6865.

29 A. (inserted) On 5/7/15, the Court in 7409 (presided over by a judge other that DeMeyer - to

be identified in discovery) was to hear PLAINTIFFs Objection to TRO and a Motion to

Disqualify Judge DeMeyer. The Court recognized all Motions were properly filed, but dismissed

the Motions and told PLAINTIFF to re-file them as no Notice of Appearance in writing had been

filed.

30.  On 5/28/15 PLAINTIFF filed Motion to Amend Temporary Orders for Custody and

Visitation, Motion to Amend Consolidation of Cases, Objection to Ex-Parte Restraining Order

(with Health and Welfare Investigation Findings Attached) and a Motion to Disqualify

DEMEYER. CANNON, represented by GRANT, filed objections on 6/4/2015.  The court,

presided over by DEMEYER, dismissed all of PLAINTIFFs filings.

31.  On 6-8-2015, a Brief Focused Assessment Report by Phares Book (Dr. BOOK) was

submitted to the court.  In the Appellants Brief, filed by PLAINTIFF on 7-18-16, it was stated

that issues were not properly considered in the BFA Report completed by Dr. BOOK.

> IRCP 16(q)(6)(C)(iv) and IRFLP 719 F.3.d. require each factor in Idaho Code 32-717 be
> addressed as well as other relevant factors.
> Idaho Code 32-717 (e) requires an evaluator to consider "the character and circumstances
> of all individuals involved".

A relevant factor that BOOK did not consider was the Order of MEIENHOFFER in

3311that forbid CANNON from allowing the Van Hook children from having any contact

whatsoever with the ELDREDGES.  This order was still in effect when BOOK conducted his

investigation.  This issue has been previously demonstrated and is available in the Supreme

Court Record in Docket 44989 on Page 1117

There was extensive testimony pertaining to ELDREDGEs and CANNON in 3311, and

the facts that were found to be true in 7409 prior to be setting aside..BOOK never considered any

of these issues, many of which were criminal and a danger to the Van Hook children… yet

BOOK reported an alleged sexual misconduct to H&W, that was later found by H&W to have

nothing to support the allegation… but he reported nothing else.  It appears that BOOK was

showing favoritism to CANNON.

32.  On 7-24-2015, CANNON filed Association of Counsel where Kimberli Stretch (STRETCH)

of Idaho Legal Aid, associated herself with 7409 to appear for or with GRANT.

33.  In 7409 PLAINTIFF filed Motion for Appointment of Guardian Ad Litem, which was heard

on 7-16-15 by DEMEYER.  The court required the posting of a $20,000 bond, and when

PLAINTIFF was unable to post said bond, the motion was dismissed.

34.  PLAINTIFF filed for Discovery of Health and Welfare records, and those documents were

provided to the Court on 7-23-15, and ordered released to the PLAINTIFF by DEMEYER on 7-

27-15, but those records were not provided to PLAINTIFF.

35.  In 7409 in PLAINTIFFs Answers to Counter Claim on 7-24-15, PLAINTIFF disputed the

Jurisdiction of DEMEYER.

36.  On 8-3-15, a Trial (PLAINTIFF disputes that this was ever a trial) in 7409, presided over by

DEMEYER, was held.  On this day, without advance notice, the court refused to consider any of

the issues from 3311, which had been consolidated with 7409.  A trial had been scheduled for 2

days, but was ended after the first day. The court refused to allow the testimony of Tiffany

Warren, who has since provided an affidavit that is found in exhibit 1 of CV14-18-5576.

Testimonies were given by the following individuals which are summarized as follows:

   Donia Ballard (Lieutenant Canyon County Sheriff's Department):

     * Became involved with case on June 14, 2014 after a missing persons report

* Began direct interaction with PLAINTIFF on June 18 or 19

* Spoke directly with CANNON on phone on July 3rd informing her of court pending actions, and CANNON refused to disclose her location.

* July 11th received a call from the Valley County Witness Coordinator

* Searching for CANNON and ELDREDGEs was a realistic step by PLAINTIFF to locate his children.

* PLAINTIFFS search was primarily in Canyon County

* PLAINTIFF had no track marks (drug use) and no efforts to conceal arms

* PLAINTIFFS behavior and attitude during search for CANNON was not harassing or bullying

* STRETCH questions if PLAINTIFF could have 'shot up' between the toes.

James Davis:

During this testimony, PLAINTIFF requests the court revisit 3311 to settle dispute about persons who offered previous testimony in 3311. Court did not reply. Further, the Court refused to allow any questioning that pertained to the ELDREDGES and their interactions with CANNON or the Van Hook children stating they were not Parties to the Action. The Court refused to consider any portion of 3311 in the trial.

* Gabriel and Nathan didn't want to leave Caldwell and were crying

* Renees behavior was not fitting that of a 13 year old girl

* Renee drank alcohol at her leisure and CANNON knew of it

* Children referred to ELDREDGES as mom and dad and called PLAINTIFF their 'Sperm Donor' by direction of CANNON and the ELDREDGES

* ELDREDGES were obligated to leave the campground by the owner in June of 2014 when CANNON left with them and the Van Hook children.

Sherry Davis:

> \* Witnessed Renee drinking alcohol in the presence of ELDREDGES and
> CANNON
>
> \* Boys crying and didn't want to leave

During the testimony of Ms. Davis, DEMEYER referred to himself and STRETCH as "We", and

STRETCH expressed the same, regarding issues DEMEYER and STRETCH had stipulated to.

> Tara Arp:
>
> > \* CANNON was a close friend and would confide things in her, but CANNON
> > had never claimed she was coerced or intimidated, and also claimed the judge had
> > dismissed her CPO in 2012.

The court claimed issues to be Irrelevant and would not allow questioning by PLAINTIFF on

issues that had been sworn by affidavit of CANNON.  Court found to be irrelevant questioning

that pertained to an auto accident by PLAINTIFF after CANNON had sworn she was never

allowed to go to a doctor.  STRETCH, in her objection stated "I fail to see what a car accident

has to do with doctors."

> > \* CANNONS living conditions were "uninhabitable for children", and that
> > PLAINTIFF had been informed of this "After the Fact", and that Health and
> > Welfare had not been contacted to protect her friend.
> >
> > \* CANNON confided in Ms. Arp stating she had said "I'll just pull in front of
> > traffic and kill us all."… that CANNON threatened to do physical bodily harm to
> > the children.
> >
> > \* Claims PLAINTIFF called law enforcement daily to harass CANNON, without
> > any law enforcement reports to substantiate this… further claiming CPS did bi-
> > weekly checks.
> >
> > \* CANNON claimed PLAINTIFF had a "balled up fist" and had pushed her.
> >
> > \* CANNON had 3 cats and a dog in her trailer with animal feces mixed in with
> > clothing.
> >
> > \* PLAINTIFF had requested she serve as a "Nanny" while PLAINTIFF was
> > working, but that PLAINTIFF would not assign her custody.

> \* CANNON physically strikes the children but PLAINTIFF has not.  CANNON regularly called Gabriel a "Retard".
>
> \* Was concerned that CANNON was on drugs and had a significant weight loss

CANNON:

> \* (regarding incident involving threat and attempt to kill herself CANNON, Gabriel, Nathan and PLAINTIFF) ... "so I stepped on the gas and was going straight and he yanked the wheel off into the parking lot".  CANNON failed to deny having said "I swear to god Ill kill us all right now".

37.  During the 7409 trial, PLAINTIFF submitted into evidence a Report Card that has an address on the reverse side.  Prior to submitting the document, Item was described by PLAINTIFF as having an address on the reverse side (the ELDREDGEs address in Council, ID) so it would be visible through a glassine envelope after being tri-folded.  STRETCH objected to this for relevance, but did not question that the address was on the reverse side.  This document is now missing from the record in 7409.  Since then, in another hearing, STRETCH denies knowing of this.

38.  When the court in 7409 gave its decision, DEMEYER ordered STRETCH to write the order and submit it directly to the court without PLAINTIFFs review.  The written order is inconsistent with the order given by the court, and is tantamount to a termination of the parental rights of PLAINTIFF.  Furthermore, the decision fails to consider all aspects of the BOOK brief focused assessment report, fails to contain any reference to the ELDREDGEs, fails to reference any acts of abuse by CANNON to the Van Hook children, states testimony had been given by Ms. Arp that had never been given, and failed to ensure the even distribution of community property.

39.  On 9/11/15, PLAINTIFF filed a Motion for Temporary Restraining Order against CANNON and the ELDREDGEs in CV-2015-0678 in Owyhee County.  The affidavit in support of this motion clearly expressed concerns of CANNON having previously ignored orders to protect the

children and Lloyd Eldredge being a convicted sex offender, and the ELDREDGEs and

CANNON allowing alcohol consumption by a minor. The court stamped the top of the motion

"DENIED" followed by the date Sept. 11, 2015, and signature of Magistrate Judge Dan Grober

(GROBER). This motion was dismissed without hearing and without explanation.

40. On 9/12/15 PLAINTIFF retained Virginia Bond (BOND) as counsel in 7409. BOND failed

to file an appeal in the case. BOND filed Motions for Reconsideration and Retrial, but dismissed

these Motions prior to hearing, and the record in 7409 does not show PLAINTIFF agreed to the

dismissal of these motions. BOND later filed a motion for change of venue that was denied by

the court. On 3/17/16, BOND was allowed to take leave from 7409 against PLAINTIFFs

objections. An Affidavit is submitted further detailing the facts of BONDs involvement in 7409.

41. PLAINTIFF filed appearance in 7409 Pro Se and then Filed a Motion to Disqualify

DEMEYER. DEMEYER heard the motion and denied it on 4/21/16.

42. On 5/27/16 PLAINTIFF Petitioned the District Court of Canyon County, Judge Vanderveld

presiding in CV-16-5044, for a Writ of Mandamus and Writ of Habeas Corpus. On 12/16/16 the

Motions were Bifurcated, and the Mandamus was dismissed and the Habeas Corpus had the

venue changed to Adams County. The Adams County Habeas Corpus case was assigned case

number CV-2017-3664 and was presided over by District Court Judge Christopher Nye (NYE).

After a briefing was filed, the case was dismissed without hearing on 6/15/17. The reason for

dismissal stated "Van Hook cannot get the requested relief because habeas corpus shall not be

used to affect or alter a custody arrangement." There was no reference to the legality of the

custody order (rather than the term "arrangement" as the dismissal indicated) that is currently

being enforced in 7409. PLAINTIFF asserts that Habeas Corpus was petitioned for when no

other relief was available, and was used as a last resort, and was a legitimate collateral attack on

an illegal order being enforced in 7409.

43.  On 6/1/16 PLAINTIFF filed a Notice of Appeal to the District Court, appealing the Decision

of DEMEYER in refusing to Disqualify himself from 7409.  This appeal was presided over by

District Court Judge D. Duff McKee (MCKEE).  This appeal was properly briefed and set to

hearing.  The appeal was dismissed by MCKEE after a hearing on 10/11/16.  There are 49 pages

containing a partial transcript of this Hearing with MCKEE *[From Exhibit 1, follow path*

*(folder) Supreme Court 44988 ... to ... (folder) SC Record - objections - judicial notice ... to...*

*(pdf) Vanhook v. Cannon appeal]*.  PLAINTIFF followed the advice of MCKEE and filed

new motions in 7409, rather than appeal the decision of the District Court to the Supreme Court.

44.  On 10/20/16 PLAINTIFF filed a Motion to hold CANNON in Contempt, Motion for a

Change of Orders, and a Motion to Change Venue.  The presiding Judge was Magistrate Howard

Smyser (SMYSER) and these motions were heard on 3/11/16.  SMYSER refused to hear any of

the motions and passed them back to DEMEYER.  PLAINTIFF then filed a Motion for

Reconsideration and a Motion to Disqualify DEMEYER with cause and submitted these in

addition to the other pending motions.  All these Motions were heard and all were dismissed on

12/8/16 by DEMEYER.

45.  On 12/1/16, PLAINTIFF filed Civil Complaint for Damages in CV-2016-11807 (11807) in

Canyon County, which was presided over by NYE, with defendants being CANNON,

DEMEYER, STRETCH, GRANT, FISHER, and BOND.  CANNON, STRETCH and GRANT

were represented by Jennifer A. Giuttari (GIUTTARI) of Idaho Legal Aid.  All defendants filed

Motions to dismiss, which were granted for all but CANNON.  As a brief summary of the

remainder of 11807, CANNON filed Motion to file under seal, preventing the introduction of the

CPO and Report of Child Protective Investigation from 3311, which was ordered by NYE on

12/7/17. Numerous attempts were made by PLAINTIFF at Discovery, and none of CANNONs responses were satisfactory. PLAINTIFF also filed for discovery for records from the Idaho Department of Health and Welfare, and Teri A. Whilden, Deputy Attorney General, complied with discovery on 1/12/18 and submitted all Health and Welfare Records demanded by PLAINTIFF to the court; However, NYE refused to release these records to the PLAINTIFF. PLAINTIFF also filed a Motion for Orders Pursuant to Idaho Public Records Act 2/15/18 which was never satisfied. Ultimately. NYE dismissed the case against CANNON after the case had been set to trial.

46. On 12/15/16 PLAINTIFF filed a Notice of appeal to the District Court. The appeal was properly briefed and was dismissed by MCKEE without hearing. (Appealing decision described in fact 44) On 4/3/17 Plaintiff filed notice of appeal to the Supreme Court. The record was prepared for the Supreme Court and PLAINTIFF filed an objection to the record as it was incomplete. On 7/18/17, the District Court Ordered the record be augmented. The case was assigned docket number 44988, and was ordered that the appeal in the Supreme Court be decided on the briefs alone with no oral arguments. The Supreme Court dismissed PLAINTIFFs appeal and sent the case back to DEMEYER.

47. On 1/27/17, CANNON, by and through her counsel STRETCH, filed Motion for Referral to Administrative Judge RE: Vexatious Litigant in 7409. An Order was issued in the case, and then another Motion for Referral to Administrative Judge RE: Vexatious Litigant was filed... District Court Administrative Judge Bradley S. Ford (FORD) presided over this case. The case numbers were changed from 7409 to CV-2017-3444 (3444). A hearing was held on this case, and PLAINTIFF submitted a copy of numerous documents on flash drive (the exhibit submitted in 3444 was an exact duplicate of what's been submitted in this case as Exhibit 1) PLAINTIFF

argued that he could not be held responsible for the actions of Judges that violated due process. FORD denied PLAINTIFFs arguments and refused to consider PLAINTIFFs Exhibit and Ordered PLAINTIFF be declared a Vexatious Litigant and further ordered PLAINTIFF "...not to file any new litigation in this state *pro se* without first obtaining leave of the court where the litigation is proposed to be filed." This finding and order were appealed to the Idaho Supreme Court, was properly briefed, and oral arguments were heard on 1/7/18, and the decision of the Supreme Court is still pending.

48. On 5/29/18 PLAINTIFF filed Exparte Motion for Order granting Leave for Filing(s), seeking to bring a Civil Complaint for Damages against defendants The State of Idaho, The Idaho Bar Association and John Does 1-100. The Court has still not granted Leave

49. A Motion for Expedited Hearing and Petitions for Writ of Certiorari and Writ of Habeas Corpus with attached Exhibit were filed with the Supreme Court on 6-19-18 and were denied.

50. Gabriel was charged with a crime in Adams County JV-02-18-0841, which remains pending, and PLAINTIFFs 'Affidavit of Ronald Van Hook Regarding Adams County Courts and Legal Misconduct' has been submitted that details some of the issues behind that case and other connecting cases. Facts are presented in said affidavit, that when combined with other facts, clearly demonstrate illicit activity of Judges in the State of Idaho, Members of the Idaho Bar Association and other Actors for the State of Idaho.

51. PLAINTIFF was charged by Adams County prosecutor Christopher D. Boyd and incarcerated in Adams County in CR02-18-020358 for felony witness intimidation, misdemeanor Disturbing the Peace, and misdemeanor Contempt of Court. All charges were dismissed.

52. PLAINTIFFs 'Affidavit of Ronald Van Hook pertaining to issues involving Virginia Bond' and 'Affidavit of Ronald Van Hook pertaining to issues involving Steven Fisher' have been submitted that detail some of the issues behind Canyon County CV-2014-7409, which had been consolidated with Adams County case CV-2014-3311. Facts are presented in said affidavit, that when combined with other facts, clearly demonstrate illicit activity of Judges in the State of

Idaho, Members of the Idaho Bar Association and other Actors for the State of Idaho.

53. Submitted 'Affidavit of Ronald Van Hook Regarding Further Damages from States

prevention of Due Process' demonstrates over $3,738.15 being due to PLAINTIFF, and the

States prevention of PLAINTIFF from seeking legal recourse. Said affidavit also demonstrates

Extortion by the State in the wrongful collection of child support under threat of loss of liberty

54. Attorney Bruce Birch was retained by PLAINTIFF and was paid his demanded retainer fee

of $2000.00. Mr. Birch, after being made fully aware of 7409, including being given an

electronic copy of all documentation and audios of said case, later refused to file any motions or

take any action and refused to represent PLAINTIFF.

55. PLAINTIFF requests leave to amend CV14-18-5576 to include bringing suit against the

same Defendants on behalf of minor sons, Gabriel and Nathan.

AUTHORITY

Article I Section 3 - "The state of Idaho is an inseparable part of the American Union, and the
Constitution of the United States is the supreme law of the land."

> U.S. Constitution Article VI, Paragraph 2 - "The Constitution, and the Laws of the United
> States which shall be made in Pursuance thereof; and all Treaties made, or which shall be
> made, under the Authority of the United States, shall be the supreme Law of the Land;
> and the Judges in every State shall be bound thereby, any Thing in the Constitution or
> Laws of any State to the Contrary notwithstanding."

Article I Section 7 - "The right of trial by jury shall remain inviolate;" ...

Article I Section 18 - "Courts of justice shall be open to every person, and a speedy remedy
afforded for every injury of person, property or character, and right and justice shall be
administered without sale, denial, delay, or prejudice."

Article V Section 26 - "All laws relating to courts shall be general and of uniform operation
throughout the state, and the organized judicial powers, proceedings, and practices of all the
courts of the same class or grade, so far as regulated by law, and the force and effect of the
proceedings, judgments, and decrees of such courts, severally, shall be uniform."

Idaho Tort claims act
6-911 LIMITATION OF ACTIONS. Every claim against a governmental entity permitted under
provisions of this act or against an employee of a governmental entity shall be forever barred,

unless an action is begun within two (2) years after the date the claim arose or reasonably should have been discovered, whichever is later.

Per Idaho 18-7805 - Seeking 3 times actual Damages and Appropriate Orders.

Per Idaho 6-1604 - Seeking Maximum Punitive Damages as allowed by law.

## ARGUMENTS

1. In addition to Exhibits 1-15 currently on record, Plaintiff intends to submit other exhibits as Necessary, including affidavits.

2. The Court in 6865 specifically stated the CPO could be refilled and republished, yet after it was refilled in other courts, they were promptly dismissed. This is specifically related to 3 of the issues the State has accused PLAINTIFF of being vexatious for in Canyon County CV-2017-3444 and subjects to a pre-filing order. Clearly, there is a lack of Uniformity amongst the Magistrate Courts as required by Idaho Constitution Article V Section 26, and therefore a violation of Due Process and Equal Protection Constitutionally required.

3. In CV-2014-8801, PLAINTIFF was refused the right to attach a document to the petition. PLAINTIFFs Discovery will require a copy of the submitted petition and the name of the Clerk who refused to allow this attachment to be made, and that clerk is currently identified as a John Doe. This individuals initials should be located on the courts intake stamp generally located in the upper right hand corner of the court submission.

A certified transcript of CV-2014-8801 is available *[From Exhibit 1, follow path (folder) Court Documents … to … (folder) 2014-8801 … to … (pdf) 20140825 - Transcript CV-2014-8801 - (Filed 8-29-16)]*

The dismissal of CV-2014-8801 was clearly a Due Process Violation. Idaho 18-7907 (3) requires both parties to be present at a hearing to be held within 14 days. CV-2014-8801 was dismissed without hearing and the court had no discretion in the matter. As DEMEYER dismissed, when he had no discretion to dismiss without a hearing involving both petitioner and