Ronald Van Hook
515 S. 11th St. #3
Payette, ID  83661
(208) 982-0164



Pro Se

# IN THE DISTRICT COURT FOR THE THIRD JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF CANYON

| | |
|---|---|
| Ronald Van Hook<br>Plaintiff<br><br>vs.<br><br>State of Idaho<br>Idaho Bar Association<br>John Doe(s) 1-100<br>Defendants | Case No.  CV14-18-5576<br><br>Affidavit of Ronald Van Hook pertaining to issues involving Steven Fisher |

I, Ronald Van Hook (AFFIANT) and the Plaintiff in CV14-18-5576, being of sound mind, over the age of eighteen (18) years, being first duly sworn, deposes and states the following:

1. Steven Fisher (FISHER) was retained by AFFIANT to represent him in matters of CV-2014-7409 (7409) in Canyon County, and then in CV-2014-3311 (3311) in Adams County, and AFFIANT had paid over $9000.00 to FISHER as a Retainer Fee.  FISHER further agreed to accept payments from AFFIANT should the Retainer fee be insufficient to cover the legal expenses incurred, with there being another witness to said agreement.

2. CV-2014-8801 in Canyon County, filed by AFFIANT Pro Se and presided over by Magistrate Judge Gary DeMeyer (DEMEYER), was dismissed by DEMEYER without hearing.

AFFIANT informed FISHER of the circumstances of the dismissal and FISHER specifically stated to AFFIANT that it sounded like a Violation of Due Process to him.

3. Magistrate Judge Gary DeMeyer (DEMEYER) had been assigned to preside over 7409, and prior to DEMEYER hearing any issue pertaining to 7409, AFFIANT specifically instructed FISHER, on several occasions, to Disqualify DEMEYER from 7409, with there being another witness to said instruction.

4. In 3311, FISHER failed to file a notice of appearance prior to the first hearing in that case, and the court, presided over by Magistrate Judge John Meienhoffer (MEIENHOFFER), did not hear the case, but rather allowed FISHER to later file a Notice of Appearance and gave the Petitioner in 3311, Dawn Cannon, f.k.a. Van Hook (CANNON) additional time to retain counsel. Both Petitioner CANNON and Respondent Ronald Van Hook the AFFIANT were present at this scheduled hearing, and no attorneys had filed their appearance.

5. During 3311, AFFIANT specifically instructed FISHER to call as witnesses Lieutenant Donia Ballard of the Canyon County Sheriffs Department, and Tara Arp, with there being another witness to said instruction, and FISHER refused.

6. During 3311, AFFIANT specifically instructed FISHER to secure and present any and all Adams County Sheriffs Depart Records to the court as evidence, including but not limited to, Audio and Video body cam and/or dash cam records, with there being another witness to said instruction, and FISHER refused.

7. During 3311, the court ordered a Health and Welfare investigation, which had been conducted by Krista Easteppe (EASTEPPE). During a portion of testimony in 3311, regarding EASTEPPEs contact with witnesses provided by AFFIANT, which were accompanied by sworn affidavits from these witnesses, EASTEPPE stated as follows:

Ms. Easteppe: "I don't know who those people are and I would have to say I don't know. I don't know who they are so I have no way of knowing what they were saying was correct or not correct, because I don't know them. I didn't get the chance to talk to them at the interview" ...

In another portion of the sworn testimony of EASTEPPE, the following is submitted:

COURT: "Ms. Easteppe, I want to make this question to you in the following context. How would you expect a reasonable ordinary husband, father of three, married for 16 years to react, if he came home some time in the middle of July to see that his wife and the three children had vanished and then went through basically a two and a half month period where he followed up with trying to locate his family, and then considering that hypothetical of what a reasonable person, ordinary father similarly situated would do. I'd like you to opine for the court how you felt Mr. Van Hook reacted to that scenario as opposed to what you would expect from somebody in the reasonable ordinary context that that happened to. So in other words, Did Mr. Van Hook behave and conduct his affairs as a reasonable and ordinary person similarly situated would? Was he more angry than normal? Was he less angry than normal? Your opinion please."

Ms. Easteppe: "I think a normal male that that would have happened to would have had a range of emotions. Sorrow, tears, empathy, anger, and not only would look at himself about what happened but also look at what happened outside with his wife and possibly his children. A person may seek assistance or help with their friends about that, trying to make sense of that. And there would be worry, concern, and just a whole range of emotions. And I didn't see that. I saw a ton of, well maybe not a ton, but a lot of affidavits smearing Mrs. Van Hook. I saw a flier that said my family's missing. She's with bad people. My children are with bad people. A three point state search. Private investigators. And I believe that that's really in excess of what a general person would have done. Certainly they would have made contacts with their friends and said do you know where they are? I'm concerned, I'm worried about them, and those kind of things. But the totality of what happened is totally different from a person who is functioning in in at all levels."

Court: "Thank you… … … ok Mr, Fisher."

Mr. Fisher: "Did you talk with Mr. Van Hook about whether he had made contact with friends, and law enforcement, and those kinds of things that you've described that a reasonable person would do?"

Ms. Easteppe: "yes. Well he told me he did. I didn't ask him, he told me what he did."

Mr. Fisher: "So he did all the things that you said would be reasonable, but he went above and beyond that is what it sounds like."

Ms. Easteppe: "Yeah

> Mr. Fisher: "So he should have stopped somewhere before going to three States and those kind of things; That's what your testimony is?"
>
> Ms. Easteppe: "I think in what in the evidence that I had in front of me is when he reached out to other people in his environment, and most of them, two of them was, well one of them was a relative, one of them was a family friend that'd been there for a while, and Tara as well, and the rest of them were residents in a trailer park who just reported they'd seen a lot of stuff, and that and all of this negative stuff against Mrs. Van Hook. And I would imagine that it took a lot of time to put all that together, and to go searching for all these people and to gather all that information, and that's what I'm saying is different from a person who who's wife of seventeen years has left him, and he loves her and he's concerned, and he's concerned about his children. It's incongruent, that his behavior is incongruent with what he did.
>
> Mr. Fisher: "I have nothing further."

8. In 3311, FISHER raised no actual objection to the contents of the report or to the way the ordered investigation was conducted.

9. In 3311, Exhibit 11 was admitted, which was a Certified Copy from court in Malheur County Oregon for conviction of Lloyd Elderedge in a sex offense.

10. During testimony in 3311, CANNON was questioned about her knowledge of Lloyd Eldredge having committed sexual molestation of the 2 daughters of Karen Elderedge, f.k.a. Fosella, on the Puyallup Reservation in the State of Washington. In a spontaneous utterance, CANNON stated that Lloyd Elderedge had nothing to do with it, but that an uncle had done it. It is a fact that Karen Elderedge had lost all parental rights of her 2 daughters, and that CANNON did not know the ELDREDGEs at this particular time. (Affiant asserts that Cannon must have been relaying a story as it had been told to her by the Eldredges. Furthermore, that Cannon knew Lloyd Elderedge had been accused of Molestation and that she knew Karen Elderedge had lost all parental rights to her daughters… however Cannon stated that an uncle had done it showing she knew of the molestation, but had taken the Eldredges word for it having been someone other than Lloyd Elderedge that had done it… which does not address the reasons Karen Elderedge

lost all rights to her children in Washington)

10. In 3311, CANNON had clearly testified she was not in fear of anything when she left with the Van Hook children and the ELDREDGEs in June of 2014, and that she had had no contact with the AFFIANT, and had made no attempt to contact the AFFIANT, since leaving Canyon County in June of 2014.

11. In 3311, the Court had interviewed Renee Van Hook (AFFIANT and CANNONs oldest daughter), but refused to interview Gabriel or Nathan Van Hook (Affiant and CANNONs younger sons) while the Court knew Gabriel and Nathan were in "camp" with Lloyd Elderedge while CANNON was at the CPO hearing.

12. In 3311, the court ordered CANNON to not allow the Van Hook children to have any contact with Lloyd or Karen Elderedge (ELDREDGEs), but did not order the ELDREDGEs to do or not do anything.

13. In 3311, the court issued a protection order for CANNON, but specifically stated the Protection Order did not extend to the Van Hook Children. In 7409 there was an existing order that assigned full custody of the Van Hook children to the AFFIANT, which the Court in 3311 was completely aware of, but the Court assigned primary custody of the Van Hook children to CANNON, in opposition to the existing order in Canyon County.

14. AFFIANT also filed for a Civil Protection Order (CPO) in Adams County, Pro Se, demonstrating the AFFIANT was fearful of sexual, physical and emotional abuse of the Van Hook children by CANNON and the ELDREDGEs, and the AFFIANT intended to call as witnesses Lieutenant Donia Ballard of the Canyon County Sheriffs Department, and Tara Arp, (the same witnesses identified in paragraph 5 of this affidavit), but the Court refused to hear that CPO petition.

15. The Court stated in 3311 that the child custody order in the Protection Order would be in place only until there was a new order issued in Canyon County.

16. FISHER refused to represent AFFIANT in any further matters pertaining to 3311. FISHER also stated to AFFIANT that 3311 could not be appealed, and that the matters involved had to be taken up in Canyon County after that.

17. As the Court in 3311 had stated the child custody issues would only be in place until a new order was given in Canyon County, and as the court in Adams County 3311 refused to hear AFFIANTs petition for a Civil Protection Order against the ELDREDGEs and CANNON on behalf of the Van Hook children, AFFIANT insisted that FISHER obtain a new order post haste, by way of another Civil Protection Order in Canyon County. FISHER refused to file for a CPO, and AFFIANT stated to FISHER, "If you won't, then I will." (to clarify: Affiant had already been granted a CPO in Canyon County in CV-2014-6865 (6865), but could not locate Cannon to get her served. The Court in 6865 specifically stated the Petition could be refiled. The Court had also granted full custody of the Van Hook children to the Affiant in 7409, but that order had been ignored, knowingly, by the Court in 3311.)

18. FISHER filed a Motion in 6865 entitled "VERIFIED EX PARTE MOTION TO REINSTATE PROTECTION ORDER or alternatively, PETITION FOR PROTECTION ORDER". Affiant had told FISHER, If you won't file it, I will. FISHER told Affiant that he'd file it, but that Judge DeMeyer had then dismissed it. This Motion was never heard or addressed by the Court and remains untouched on the record in 6865. It wasn't until 2015, when AFFIANT was obtaining copies of all court documents for other litigation purposes, that this filing was found to have been untouched.

19. AFFIANT petitioned for a CPO in CV-2014-11708 (11708), DEMEYER presiding, and that petition was dismissed without hearing. In the hearing, DEMEYER specifically referenced the

pending case in 7409 and stated he wouldn't allow AFFIANT to argue for custody in a CPO, but that it had to wait for the divorce. DEMEYER also acknowledged CANNONs previous attempt to kill the Van Hook children, herself and the AFFIANT in a motor vehicle and offered a CPO between CANNON and the AFFIANT, but refused to protect the children.

20. AFFIANT personally made FISHER aware of the outcome of 11708, and FISHER specifically stated that it looked like another Due Process Violation. AFFIANT again specifically instructed FISHER to disqualify DEMEYER from 7409, which still had not been presided over by DEMEYER, but FISHER refused to disqualify DEMEYER from 7409.

21. In 7409, presided over by DEMEYER, CANNON filed separate Motions to Set Aside Order of Default on 10/15/14, Motion in Limine and Judicial Notice of Report of Child Protective Investigation on 10/24/14, Motion for an Immediate and Temporary Ex Parte Restraining Order on 3/25/15, and a Motion For Temporary Orders for Custody on 4/16/15. FISHER failed to file any objections to any of these Motions, and was then granted leave from 7409 on 4/16/15 after AFFIANT had been threatened with arrest and incarceration by DEMEYER when attempting to make an objection during the hearing on 4/16/15.

22. AFFIANT asserts and has concluded without any reservation that it appears that FISHER was grossly negligent in his representation of AFFIANT in 3311 and 7409, and that FISHER remains contractually obligated to AFFIANT in 6865 and to all subject matter thereunto pertaining. AFFIANT also asserts that FISHER was granted leave from 7409 after knowingly and deliberately creating a situation that wrongfully favored CANNON, and as such was wrongfully granted leave from 7409. AFFIANT further asserts and has concluded without any reservation that it appears that FISHER had conspired with MEIENHOFFER, DEMEYER and with counsel for CANNON, in the violation of the Civil Rights of AFFIANT, and has with

malice and forethought prevented Due Process of Law and Equal Protection of the Law, and in doing so allowed Cruel and Unusual Punishment be inflicted on the AFFIANT, and Subjected AFFIANT to Involuntary Servitude, among many other things that remain unaddressed.

DATED THIS _____ day of _____, _____.

State of Idaho
County of _____ ss

_____ being sworn, deposes and says: That the party is the Plaintiff in the above-entitled case, and that all statements herein are true and correct to the best of his or her knowledge and belief.

_____
Ronald L. Van Hook
Plaintiff

Subscribed and Sworn to before me this _____ day of _____, _____.

_____

My commission expires _____